UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Michael Gorsuch

    v.                                  Civil No. 10-cv-495-JD
                                        Opinion No. 2011 DNH 087

James Maloney, et al.


O R D E R

Michael Gorsuch brought federal and state claims against two New Hampshire state troopers, the City of Nashua, and several Nashua police officers, arising out of the defendants' responses to a car accident in which Gorsuch was involved.  Gorsuch alleges two claims against Nashua Police Sergeant Thomas MacLeod: a state law claim of intentional infliction of emotional distress (Count V), and a federal claim, pursuant to 42 U.S.C. § 1983, that MacLeod violated his rights under the Fifth and Fourteenth Amendments (Count VIII).  MacLeod moves to dismiss the claims against him.  Gorsuch concedes that the federal civil rights claim should be dismissed, but he objects to the dismissal of his claim against MacLeod for intentional infliction of emotional distress.


## Standard of Review

When a defendant moves to dismiss the plaintiff's claim or claims under Federal Rule of Civil Procedure 12(b)(6), the court

"accept[s] as true all well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." Decotiis v. Whittemore, 635 F.3d 22, 27 (1st Cir. 2011) (internal quotation marks omitted). To state a claim, the plaintiff must allege "a plausible entitlement to relief" meaning "a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007). The Rule 12(b)(6) standard requires more that labels, conclusions, or a mere recitation of the elements of a cause action. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Plausibility does not require allegations amounting to a probability but needs more than a mere possibility. Id.

## Background

The following summary of the pertinent facts is taken from Gorsuch's amended complaint.

Michael Gorsuch and his friend, Daniel Rodriguez, celebrated the Red Sox World Series win on October 28, 2007, at the Sky Lounge in Nashua, New Hampshire. Gorsuch and Rodriguez then left in a car that Rodriguez had taken home from the Toyota Scion dealership, where he worked. Rodriguez drove, and Gorsuch was in the passenger seat. Neither wore seatbelts. During the drive home on Thornton Street in Nashua, Rodriguez lost control of the car, which spun several times and hit a large tree.

Rodriguez was killed in the accident. Gorsuch was protected by the passenger side air bag and was not seriously injured. Nashua Fire and Rescue and Nashua Police Department officers responded to the scene of the accident. The collision reconstruction team determined that Gorsuch was driving the car when the accident occurred. Gorsuch was charged with negligent homicide.

The Nashua police interrogated Gorsuch at the police station following the crash. Initially, Gorsuch was held in a cell far from the booking room. Thereafter, MacLeod moved Gorsuch to the cell closest to the booking desk and proceeded to discuss the results of an autopsy that had been performed on Rodriguez. MacLeod also showed Gorsuch a series of photographs of the wrecked Scion. Gorsuch became extremely distraught and stated, "Why didn't he give me his keys?" MacLeod reported that Gorsuch had said, "Why *did* he give me his keys?" According to Gorsuch, all of MacLeod's actions occurred after Gorsuch had invoked his right to counsel.

Ultimately, the Nashua police never used Gorsuch's statements to MacLeod against him in criminal proceedings. Gorsuch's attorney obtained a technical accident reconstruction which determined that Gorsuch was a passenger and that Rodriguez was driving the car. After reviewing both accident reconstruction analyses at the request of the County Attorney, former New Hampshire State Trooper Gordon Johnson agreed with

Gorsuch's reconstruction report that Rodriguez was the driver. The County Attorney ordered that the case be "nolle prossed" just before trial.

## Discussion

Gorsuch brings a federal claim, alleging a violation of the Fifth Amendment, and a state law claim of intentional infliction of emotional distress against MacLeod, both of which relate to MacLeod's interrogation of Gorsuch.  MacLeod moves to dismiss the claims, on the grounds that the interrogation, as alleged by Gorsuch, did not violate Gorsuch's civil rights and did not support a claim for intentional infliction of emotional distress as a matter of law.  MacLeod also argues that he is entitled to qualified immunity on the federal claim.

A.   Federal Claim

In his Amended Complaint, Gorsuch alleges that MacLeod violated his Fifth Amendment right to freedom from self-incrimination, made applicable to the states by the Fourteenth Amendment, by continuing to interrogate him about the accident after Gorsuch had unambiguously requested the presence of an attorney.  He seeks punitive damages, as well as attorney's fees and costs, pursuant to 42 U.S.C. §§ 1983 and 1988.

The Fifth Amendment protects an individual against compelled self-incrimination. Miranda v. Arizona, 384 U.S. 436, 439

(1966). Unlawful questioning by police, alone, however, does not violate a defendant's Fifth Amendment right against self-incrimination. Chavez v. Martinez, 538 U.S. 760, 767 (2003). "Statements compelled by police interrogations of course may not be used against a defendant at trial, but it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs. . . ." Id. (internal citations omitted); see also McConkie v. Nichols, 446 F.3d 258, 261 (1st Cir. 2006)(citing Chavez, 538 U.S. at 779-80 for the proposition that unlawful questioning "does not necessarily mean that the questioning entitles the plaintiff to damages under section 1983").

Gorsuch concedes that he has not asserted a violation of his Fifth Amendment right against self-incrimination, because the statements Gorsuch made to MacLeod were never introduced in a criminal proceeding. Therefore, Count VIII is dismissed.

B.   Intentional Infliction of Emotional Distress

New Hampshire recognizes the tort of intentional infliction of emotional distress in accord with Section 46 of the Restatement (Second) of Torts, which states that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement (Second) of Torts § 46 (1965); see Morancy v. Morancy, 134 N.H. 493, 496 (1991).

The standard for proving a claim of intentional infliction of emotional distress in New Hampshire is "very high."  Moss v. Camp Pemigewassett, Inc., 312 F.3d 503, 511 (1st Cir. 2002).  To establish that conduct is "extreme and outrageous," the plaintiff must show that "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Mikell v. Sch. Admin. Unit #33, 158 N.H. 723, 729 (2009).

In his amended complaint, Gorsuch alleges only that MacLeod discussed Rodriguez's autopsy results with him and showed him photographs of the wrecked car.  MacLeod's conduct, as alleged, does not rise to the level necessary to state a claim of intentional infliction of emotional distress.  Therefore, Count V is dismissed as to MacLeod.


## Conclusion

For the foregoing reasons, MacLeod's motion to dismiss (doc. 24) is GRANTED.

SO ORDERED.

*[signature: Joseph A. DiClerico, Jr.]*
Joseph A. DiClerico, Jr.
United States District Judge

June 1, 2011

cc: Brian J.S. Cullen, Esquire
    Richard J. Lehmann, Esquire
    Kevin H. O'Neill, Esquire