```
             UNITED STATES DISTRICT COURT FOR THE
                   DISTRICT OF NEW HAMPSHIRE


Michael Gorsuch

     v.                                Civil No. 10-cv-495-JD
                                       Opinion No. 2011 DNH 100
James Maloney, et al.
```

O R D E R

Michael Gorsuch brought federal and state claims against two New Hampshire state troopers, the City of Nashua, and several Nashua police officers arising out of the defendants' responses to a car accident in which Gorsuch was involved.  Lieutenant John Fisher, Sergeant James Maloney, and Officer Jeffrey Maher of the Nashua Police Department now move to dismiss two conspiracy claims against them in Counts IX and X of the Amended Complaint. Gorsuch objects to the motion.


Background

The following summary of the pertinent facts is taken from Gorsuch's amended complaint.

Michael Gorsuch and his friend, Daniel Rodriguez, celebrated the Red Sox World Series win on October 28, 2007, at the Sky Lounge in Nashua, New Hampshire.  Gorsuch and Rodriguez then left in a car that Rodriguez had taken home from the Toyota Scion

dealership, where he worked. Rodriguez drove, and Gorsuch was in the passenger seat. Neither wore seatbelts. During the drive home on Thornton Street in Nashua, at about 12:30 a.m. on October 29, Rodriguez lost control of the car. The car spun several times and hit a large tree.

Rodriguez was killed in the accident. Gorsuch was protected by the passenger side air bag and was not seriously injured. Nashua Fire and Rescue and Nashua Police Department officers responded to the scene of the accident and determined that a collision reconstruction would be necessary. Lieutenant John Fisher, head of the reconstruction team, was contacted and told to mobilize his unit.

At about 1 a.m., Fisher called Sergeant James Maloney at home and advised him of the collision. Maloney responded to the scene, then called Fisher and told him that the accident appeared to be a potential negligent homicide. At about 2:30 a.m., Fisher, Maloney, and Officer Jeff Maher met at the Nashua Police Department Headquarters to discuss the investigation. Maloney noted in his police report that "[i]t was determined after our meeting that this is a negligent homicide case." (Amended Complaint, Doc. No. 20, p. 6).

The collision reconstruction team, which included Maloney and Fisher, then conducted the technical collision analysis that

formed the basis of its report. The team issued a report concluding that Gorsuch had been driving the car when the accident occurred. Gorsuch was charged with negligent homicide.

In his Amended Complaint, Gorsuch alleges that the report was deficient, in that it did not analyze passenger kinematics, nor consider certain evidence suggesting that Rodriguez was driving. That evidence, Gorsuch alleges, was as follows:

> (1) A Red Sox hat was found lodged between the passenger-side airbag and the door. Mr. Gorsuch was a Red Sox fan, and Mr. Rodriguez was a Yankees fan;
>
> (2) Mr. Rodriguez's shoe was found in the driver-side footwell;
>
> (3) The Scion belonged to Mr. [Rodriguez's] employer, and Mr. Rodriguez was the only person authorized to drive the Scion. . . .; and
>
> (4) In a collision involving impacts to both the right-side and rear of the vehicle, it can be assumed that unrestrained passengers would be thrown to the right and to the rear. This type of impact would naturally cause the driver to land in the right rear seat, and the passenger to be pushed into the back of the passenger seat and the right side airbag. This is exactly what happened.

(Doc. 20, p. 7).

The County Attorney's Office did not forward the officers' collision analysis to Gorsuch's attorney until January 19, 2009, days before his trial was scheduled to begin. By that time,

Gorsuch's attorney had obtained a second technical accident reconstruction, which determined that Gorsuch was a passenger and that Rodriguez was driving the car.  The County Attorney asked former New Hampshire State Trooper Gordon "Chip" Johnson, an accident reconstruction expert, to review both accident reconstruction analyses.  Johnson agreed with Gorsuch's reconstruction report that Rodriguez was the driver.  The County Attorney then ordered that the case be "nolle prossed" just before trial, over the vehement objections of various Nashua police officers.

The Nashua Telegraph wrote a series of articles about the criminal case against Gorsuch.  To assist in his reporting, a reporter at The Telegraph obtained a third technical accident reconstruction report of the accident from Bruce McNally of McNally & Associates in Rochester, New Hampshire.  McNally also concluded that Rodriguez was the driver.  In his report, McNally stated that police investigators had not employed any "recognized accident reconstruction methodologies" in concluding that Gorsuch was driving the Scion at the time of the crash.  In particular, he stated that the police had not conducted an analysis of the occupants' movements during the crash, and that they had neglected to describe in their report an airbag-related abrasion

on the right side of Gorsuch's face that suggested that he was seated in the front passenger seat at the time of the accident.

After the criminal case against Gorsuch was "nolle prossed," Fisher, Maloney, and the Nashua Police Department asked New Hampshire State Troopers Carleen Bowman and Mark Nash to prosecute Gorsuch in an administrative proceeding to terminate Gorsuch's driver's license.  Bowman prosecuted Gorsuch in administrative hearings on May 20, 2009, and June 30, 2009, presenting evidence provided to her by the Nashua police. Nash prosecuted the case and presented evidence, also from the Nashua police, at a hearing on December 4, 2009.  The hearings examiner determined that the state had not shown that Gorsuch was driving the car.

## Standard of Review

When a defendant moves to dismiss the plaintiff's claim or claims under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] as true all well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff. . . ." Decotiis v. Whittemore, 635 F.3d 22, 27 (1st Cir. 2011) (internal quotation marks omitted).  To state a claim, the plaintiff must allege "a plausible entitlement to relief" meaning "a claim to relief that is plausible on its face."  Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007).  The Rule 12(b)(6) standard requires more than labels, conclusions, or a mere recitation of the elements of a cause action.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Plausibility does not require allegations amounting to a probability but needs more than a mere possibility.  Id.

## Discussion

In Count IX, Gorsuch alleges that Fisher, Maloney, and Maher conspired to deprive him of his right to substantive due process under the Fourteenth Amendment by fabricating their technical collision reconstruction report to support the negligent homicide charge against him.  He seeks punitive damages pursuant to 42 U.S.C. § 1983 and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.  In Count X, Gorsuch claims that Fisher, Maloney, and Maher, along with Troopers Bowman and Nash, conspired to deprive Gorsuch of his driver's license, which Gorsuch claims violated his Fourth, Fifth, and Fourteenth Amendment rights.  He seeks compensatory damages and punitive damages under § 1983.  Fisher, Maloney, and Maher move to dismiss both counts on the ground that Gorsuch has not pled sufficient facts, pursuant to Federal Rule of Civil Procedure 8(a), to plausibly suggest a conspiratorial agreement.

A civil rights conspiracy under § 1983 is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008), abrogated in part on other grounds by Maldonado v. Fontanes, 568 F.3d 263 (1st Cir. 2009). "'The agreement that rests at the heart of a conspiracy is seldom susceptible of direct proof: more often than not such an agreement must be inferred from all the circumstances.'" Williams v. City of Boston, --- F. Supp. 2d. at ---, 2011 WL 1087686 at *12 (quoting Earle v. Benoit, 850 F.2d 836, 843 (1st Cir. 1988))(internal brackets omitted).

A.   Conspiracy to Falsify Evidence

The defendants move to dismiss Count IX on the ground that Gorsuch has failed to allege any facts to show that they entered into an agreement to falsify evidence against him.  In response, Gorsuch argues that the following factual allegations in the amended complaint are sufficient to infer such an agreement: (1) Fisher, Maloney, and Maher met at the police station in the middle of the night and identified the accident as a negligent

homicide case prior to conducting a technical analysis of the scene;[1] (2) their subsequent report, which concluded that Gorsuch was the driver, did not employ recognized accident reconstruction methodologies or consider contradictory evidence; and (3) two accident reconstruction experts conducted independent investigations of the crash and criticized the police report as deficient.[2]

Gorsuch alleges that the defendants determined that they would charge him with negligent homicide, then fabricated evidence by preparing a sham investigation indicating that he was the driver. He alleges that the defendants purposefully ignored key evidence and failed to incorporate recognized accident reconstruction methodologies in their report. The circumstances as Gorsuch has alleged them support an inference that defendants were acting pursuant to an agreement. See, e.g., Williams, --- F. Supp. 2d. at ---, 2011 WL 1087686 at *12. Although the

---

[1] In his objection to the defendants' motion to dismiss, Gorsuch misstates his Amended Complaint as alleging that none of the defendants had viewed the crime scene at the time of their meeting. (Doc. 34, p. 3). In fact, the Amended Complaint alleges that Maloney responded to the scene prior to meeting with Fisher and Maher. (Doc. 20, p. 5).

[2] Gorsuch also argues in his objection that the defendants wrongly withheld their report from Gorsuch's attorney until days before trial. (Doc. 20, p. 21; Doc. 34, p. 4). The Amended Complaint, however, alleges that the prosecutors, not the defendants, withheld the report. (Doc. 20, p. 9).

defendants offer reasons other than a conspiracy for their actions, the standard of review for a motion under Rule 12(b)(6) favors the plaintiff.  Gorsuch has alleged sufficient facts that, if true and taken in the light most favorable to him, support his claim that the defendants conspired to deprive him of his substantive due process rights.

B.   Conspiracy to Deprive Gorsuch of his Driver's License

Gorsuch alleges in Count X that Fisher, Maloney, and Maher, along with Troopers Bowman and Nash, conspired to deprive him of his driver's license, initiating the administrative proceeding "primarily by reason of ill will or hostility."  (Amended Complaint, Doc. 20, p. 22).  The defendants argue that Gorsuch has failed to plead any facts from which an agreement could be inferred.

As discussed above, Gorsuch has alleged sufficient facts, when taken as true, to allow an inference that Fisher, Maloney, and Maher agreed to fabricate an accident report to support the negligent homicide charge against Gorsuch.  For purposes of his conspiracy claim against Fisher, Maloney, Maher, and Troopers Bowman and Nash, Gorsuch further alleges that Fisher, Maloney, and Maher prevailed on Bowman and Nash to initiate and prosecute Gorsuch in administrative proceedings for the purpose of taking

away Gorsuch's right to drive in New Hampshire.  Gorsuch alleges that Fisher, Maloney, and Maher made that effort through Bowman and Nash in order to "get" him.

Gorsuch states that Bowman and Nash presented evidence provided to them by the Nashua police at hearings held over a span of several months.  He contends that when they presented the evidence, Bowman and Nash knew or should have known that Gorsuch was not driving the car at the time of the accident.  Further, Gorsuch states that because Bowman and Nash knew or should have known that Gorsuch was not driving the car, they used the administrative proceeding to provide "cover" for the actions of the Nashua police and not for a legitimate purpose.

Under the circumstances that Gorsuch alleges, if taken as true, it is reasonable to infer that Fisher, Maloney, and Maher agreed with Troopers Bowman and Nash to pursue administrative proceedings for the purpose of depriving Gorsuch of his right to drive in New Hampshire despite a lack of evidence to support the proceedings.

Conclusion

For the foregoing reasons, Fisher, Maloney, and Maher's motion to dismiss (doc. 25) is DENIED.

SO ORDERED.

```
                              _____
                              Joseph A. DiClerico, Jr.
                              United States District Judge
```

June 21, 2011

cc:   Brian J.S. Cullen, Esquire
      Richard J. Lehmann, Esquire
      Kevin H. O'Neill, Esquire