UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Michael Gorsuch

v.                                    Civil No. 10-cv-495-JD

James Maloney, et al.

O R D E R

Michael Gorsuch brought state and federal claims against the
City of Nashua; Nashua police officers, James Maloney, John C.
Fisher, Jeffrey Maher, Thomas MacLeod, and Donald F. Conley; and
two New Hampshire State Troopers, arising from Gorsuch's arrest
and prosecution on a charge of negligent homicide.[1]  The Nashua
defendants move for summary judgment on the claims against them.
In response, Gorsuch has withdrawn his claims in Counts IV, VI,
and VII but objects to summary judgment on Counts I, II, III, V,
IX, and X.[2]

Standard of Review

Summary judgment is appropriate if the moving party "shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a).  A party opposing summary judgment "must set forth

---

[1]Claims against the state troopers and MacLeod, including
Count VIII, have been dismissed in previous orders.

[2]The claims against Conley are withdrawn, leaving the City
of Nashua, Maloney, Fisher, and Maher as the remaining
defendants.

specific facts showing that there is a genuine issue for trial."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).
Material facts are "facts that might affect the outcome of the
suit under the governing law."  Id. at 248.  The court considers
the undisputed material facts and all reasonable inferences from
those facts in the light most favorable to the nonmoving party.
Avery v. Hughes, 661 F.3d 690, 693 (1st Cir. 2011).

    Only properly supported facts may be considered for purposes
of summary judgment.  Fed. R. Civ. P. 56(c)(1).  Allegations,
accusations, argument, and speculation are not facts to support
or oppose summary judgment.  Jones v. Walgreen Co., 679 F.3d 9,
13 (1st Cir. 2012).  Further, "[a]ll properly supported material
facts set forth in the moving party's factual statement shall be
deemed admitted unless properly opposed by the adverse party."
LR 7.2(b)(2).


## Background

    On Sunday, October 28, 2007, Michael Gorsuch and his friend,
Daniel Rodriguez, planned to watch the Patriots game and then the
Red Sox in game four of the World Series.  After meeting at
Rodriguez's house, they drove to the Sky Bar in Nashua in a car
from the Scion dealership where Rodriguez worked.  Gorsuch and
Rodriguez drank beer and mixed drinks during the evening, leaving
the bar after midnight in Rodriguez's car.

2

On the way back, they missed the turn to Rodriguez's house, while moving at high speed.  The car left the road, hit smaller trees, and stopped after colliding with a larger tree.  Brett Parks was driving by at about 12:30 a.m., saw the accident scene, and stopped to help.  When Parks arrived, Gorsuch was out of the car, talking to a 911 dispatcher on his cell phone.  Parks found that the driver's door was open and that Rodriguez was in the back seat behind the driver's seat with his legs over the center console of the car.  Parks moved the driver's seat forward to get to Rodriguez to assess his condition and did not find a pulse. Gorsuch also got into the car so that he could describe Rodriguez's condition to the 911 dispatcher.

Officer Christopher DiTullio and Sergeant Frank Bourgeois of the Nashua Police Department arrived at the accident scene and began to try to remove Rodriguez from the car.  EMTs from the Nashua Fire Rescue Department arrived, and DiTullio and Bourgeois turned their attention to Gorsuch.  Bourgeois told Gorsuch that Rodriguez was not breathing.  DiTullio noted the smell of alcohol on Gorsuch's breath.  Gorsuch said Rodriguez had been driving and that they had been wearing seatbelts.  Bourgeois stated in his affidavit that he found Gorsuch's statements to be "deceptive". Gorsuch has very limited memory of the accident.

Gorsuch also talked to EMT Justin Hart.  Gorsuch told Hart that he had gotten out of the car through the passenger side door.  When Hart pointed out that the passenger door was pinned

3

against a tree, Gorsuch explained that he had closed the door.
Later, Gorsuch said that he climbed over Rodriguez to get out
through the driver's door.  Although Gorsuch appeared to have
only minor injuries, the EMTs wanted him to be taken to the
hospital.

Detectives Craig Allard and Kerry Baxter went to the
hospital to talk to Gorsuch.  Gorsuch said that he had had beer
and "Stoli bombs" and that Rodriguez had had only two beers and
one "Stoli bomb."[3]  Gorsuch said that he was too drunk to drive
and that Rodriguez was driving when they left the bar.  Gorsuch
said they were going too fast and remembered seeing trees.  He
also said that neither of them was wearing a seatbelt.  Gorsuch
said that after the accident, Rodriguez was in the driver's seat,
that he leaned over to check Rodriguez's pulse, and that he then
opened the passenger door and got out of the car.  Baxter
confronted Gorsuch with the inconsistencies between his
description of what happened and the actual situation after the
accident.  Gorsuch stuck by his version of events.

Nashua Police Department policy required an investigation
into the accident because of its severity and because of the
fatality.  Sergeant John Fisher was supervisor of the Nashua
Police Department Collision Reconstruction Unit.  After he was
notified of the accident, Fisher contacted Sergeant James

---

[3]The bar tab showed that Rodriguez and Gorsuch together
ordered fourteen pints of beer and eight "Jaegerbombs" which are
a mix of Jaegermeister and Red Bull.

Maloney, a member of the unit, and Maloney went to the accident scene. Maloney observed the wrecked car and noted that it was crushed on the passenger side by trees. Maloney also talked to the officers at the scene who told him about Gorsuch's actions and statements.

Fisher, Maloney, and Sergeant Jeffrey Maher then met at the police department. Allard reported Gorsuch's statements about what had happened. Allard said that based on what he had seen at the accident scene and on Gorsuch's statements, he thought Gorsuch had been driving the car at the time of the accident. Fisher, Maloney, and Maher concluded that they would investigate the accident as a possible negligent homicide. Allard stated in his affidavit that based on Gorsuch's intoxication and his claims that he was a passenger in the car, which he reported to Maher, they decided to read Gorsuch his "Felony Administrative License Suspension rights and to do an involuntary blood draw." Maher, Fisher, and Maloney concluded that Gorsuch should be arrested for negligent homicide. Allard conducted the arrest and read Gorsuch his Miranda rights.

Later in the morning of October 29, 2007, Baxter and Allard interviewed Gorsuch further at the Nashua Police Department. Gorsuch stated again that he was not driving, that Rodriguez had passed out in the driver's seat, and that Gorsuch had checked Rodriguez for a pulse and for breathing. Gorsuch said that if the police had DNA or fingerprint evidence that showed he was

driving, he would accept that he was driving.  He remembered other details from the accident but said that he could not remember how he had gotten out of the car.

The Chief Medical Examiner for the State of New Hampshire, Dr. Thomas Andrews, conducted an autopsy on Rodriguez's body on the morning of October 29, 2007.  He concluded that Rodriguez "died as a result of multiple blunt impact injuries sustained as the unrestrained passenger in a vehicle that left the roadway and struck a stand of trees on the passenger side."  Maloney learned of Dr. Andrews's conclusions from Detective Patrick Goodrich and Officer Peter Laroche.

The Nashua Police Department continued the investigation over the next few months.  Some of Rodriguez's friends denied Gorsuch's claim that Rodriguez would not let anyone else drive the cars from the dealership.  DNA samples from the car were tested and showed that Gorsuch's DNA was on the steering wheel and Rodriguez's DNA was on the passenger's head rest.

Maloney, assisted by Fisher, completed a Nashua Police Department Traffic Collision Reconstruction Report on October 29, 2009.  The report summarized their investigation and findings and concluded that Gorsuch was driving at the time of the accident.[4]

---

[4]Gorsuch criticizes the report for failing to focus on the primary issue of who was driving the car.  In the section for findings, opinions, and conclusions, the report states that the three considerations in the collision were the vehicle, the roadway, and the operator.  At paragraph 4, the report concludes that Gorsuch was intoxicated and was the operator.  Therefore, the report does address the question of who was driving the car.

In support, the report noted that driving under the influence and speed caused the accident, that Rodriguez's injuries were consistent with the extensive damage to the passenger side of the car, that Rodriguez's position in the car after the accident was consistent with him having been in the passenger seat, and that the autopsy found Rodriguez was a passenger at the time of the accident.  The report further noted Gorsuch's minor injuries and his statements about wearing a seatbelt and getting out of the car on the passenger side.

Before Gorsuch was tried on the negligent homicide charge, his counsel obtained an accident reconstruction report from Charles A. Schack, President of CrashExperts, Inc.  Based on his analysis, Schack gave his expert opinion that Rodriguez, not Gorsuch, was driving the car at the time of the accident.  Among other things, Schack noted the Boston Red Sox hat lodged between the passenger headrest and the side airbag, which indicated that someone was in the passenger seat at the time of the accident; Rodriguez's shoe in the driver's side wheel well, which was consistent with Rodriguez having been the driver at the time of the accident, and Rodriguez's position in the back seat, where he could have been propelled from the driver's seat during the accident.  Gorsuch's counsel provided Schack's report to the prosecutor.

In response, the prosecutor asked Gordon E. Johnston, owner and president of Crash Lab, Inc., who previously had done accident reconstruction for the New Hampshire State Police, to

7

review the accident reconstruction evidence in the case.
Johnston's report was not provided to the defense.  The
prosecutor then nolle prossed the charge against Gorsuch.

New Hampshire State Trooper Bowman contacted Fisher to
notify the Nashua Police Department that the state was going to
pursue a license revocation proceeding in the Department of
Safety against Gorsuch.  Bowman asked for materials from the
Nashua Police Department.  A hearing was held on May 20 and June
30, 2009.

Fisher testified at the hearing under subpoena.  Gorsuch
submitted the report prepared by Schack, along with other
evidence to support his defense that he was not the driver.
Gorsuch's counsel noted Johnston's opinion that Gorsuch was not
the driver, although Johnston did not testify.  The hearings
examiner also considered the autopsy report by the medical
examiner and lab reports of fingerprint analyses and DNA
evidence.

On July 17, 2009, the hearings examiner found that the state
met its burden by showing by a preponderance of the evidence that
Gorsuch was driving the car at the time of the accident.
Gorsuch's right to drive in New Hampshire was suspended for seven
years.

Gorsuch appealed the decision to the Superior Court.  In
support of his appeal, Gorsuch asked to be allowed to present
additional evidence and expert testimony.  Following a hearing on
the issue, the court held that applicable law did not allow the

court to consider additional evidence on appeal but also concluded that the hearings examiner's decision was "unjust at present" and remanded the case to the Department of Safety so that the hearings examiner could hear the additional evidence.

On remand, a hearing was held on December 4, 2009, at the Department of Safety.  Gorsuch provided an accident reconstruction report that was prepared by Bruce F. McNally on November 24, 2009.[5]  Johnston testified about his analysis of the accident and his conclusion that Rodriguez, not Gorsuch, was driving the car at the time of the accident.  Fisher testified as a rebuttal witness about the position of Rodriguez's body in the car.  McNally also testified, explaining his report and giving his opinion, based on his analysis, that Gorsuch was in the passenger seat at the time of the accident.

The hearings examiner issued a decision on December 17, 2009.  The hearings examiner found that the opinions of Johnston, McNally, and Schack were all consistent.  After noting that the case was a close one, the hearings examiner found by a preponderance of the evidence that Gorsuch was not the driver at

---

[5]Gorsuch asserts in his objection to summary judgment that McNally first did a reconstruction analysis of the accident for the Nashua Telegraph newspaper but cites only McNally's November 24, 2009, report that does not appear to mention the Nashua Telegraph.  Therefore, it appears that Gorsuch hired McNally to do the November 24, 2009, report.

the time of the accident.  As a result, Gorsuch's license was no longer suspended, and the case was dismissed.

Discussion

Gorsuch brings state claims of malicious prosecution and intentional infliction of emotional distress and federal claims under 42 U.S.C. § 1983, alleging due process violations.[6]  The defendants seek summary judgment on the remaining claims on the grounds that the evidence shows they had probable cause to arrest Gorsuch, that Gorsuch cannot prove his state or federal claims, that the individual defendants are entitled to qualified immunity as to the federal claims, and that the defendants are entitled to official immunity as to the state law claims.  Gorsuch objects to summary judgment on Counts I, II, III, V, IX, and X.

A.  State Claims

Gorsuch brings three state claims.  In Count I, Gorsuch alleges that his arrest for negligent homicide constituted malicious prosecution, and he brings that claim against Fisher, Maloney, Maher, and the City of Nashua, under a theory of respondeat superior.  In Count II, Gorsuch alleges that the driver's license suspension proceeding also constituted malicious prosecution, and he brings that claim against Fisher, Maloney, and the City of Nashua.  In Count V, he alleges intentional

---

[6]As noted above, Gorsuch does not object to summary judgment on his claims in Counts IV, VI, and VII.

infliction of emotional distress against Fisher, Maloney, Maher, and the City of Nashua.

    1.  <u>Malicious Prosecution, Counts I and II</u>

"In order to prevail on a civil malicious prosecution claim, the plaintiff must prove: (1) that he was subjected to a civil proceeding instituted by the defendant; (2) without probable cause; (3) with malice; and (4) that the proceedings terminated in the plaintiff's favor." <u>Paul v. Sherburne</u>, 153 N.H. 747, 749 (2006). "'Probable cause to arrest exists when the arresting officer has knowledge and trustworthy information sufficient to warrant a person of reasonable caution and prudence in believing that the arrestee has committed an offense.'" <u>Hartgers v. Town of Plaistow</u>, 141 N.H. 253, 255 (1996) (quoting <u>State v. Brown</u>, 138 N.H. 407, 409 (1994)). Negligent homicide requires proof that the person "when in consequence of being under the influence of intoxicating liquor . . . while operating a [car], . . . causes the death of another." RSA 630:3, II.

Counts I and II focus on different proceedings. Count I alleges malicious prosecution in the arrest for negligent homicide. Count II alleges malicious prosecution in the license revocation proceeding.

    a.  <u>Arrest for Negligent Homicide</u>

The defendants contend that because they had probable cause to arrest Gorsuch, the malicious prosecution claim fails. The

11

defendants point to the evidence known to them when Gorsuch was arrested and contend that because they had probable cause to arrest, the malicious prosecution claim must fail.  They also assert that Gorsuch lacks evidence of malice.  Gorsuch argues that the police officers should not have considered Gorsuch's statements after the accident because he was intoxicated and was emotionally distraught.  Gorsuch also argues that the officers were motivated to charge Gorsuch as the driver of the car in order to test his blood alcohol level.

Probable cause to arrest is assessed based on what the officers knew at the time of the arrest.  State v. Schulz, ---A.3d ---, 2012 WL 4672023, at *5 (N.H. Oct. 4, 2012).  In this case, the summary judgment record shows that at the time of the arrest, Fisher, Maher, and Maloney knew:

that Gorsuch had been involved in a car accident which resulted in Rodriguez's death,

that Gorsuch was intoxicated at the time of the accident,

that Gorsuch sustained only minor injuries while Rodriguez had extensive injuries,

that Gorsuch was outside of the car immediately after the accident,

that the driver's door was open and the passenger door was pinned closed,

that the passenger's side of the car had severe damage from the accident,

that Rodriguez's body was in the back of the car,

12

that Gorsuch claimed to have been the passenger and to have left the car through the passenger's door which was pinned closed,

that Gorsuch also claimed that Rodriguez was in the driver's seat after the accident, and

that Gorsuch claimed he checked Rodriguez's pulse and breath and then climbed over him to get out through the driver's door. The officers concluded that Gorsuch had been driving at the time of the accident because of the inconsistency in his statements and because Rodriguez suffered more severe physical injuries than Gorsuch, particularly on his right side, which was consistent with the extensive damage to the right side of the car.

Gorsuch challenges the reliability of his statements because of his impaired condition and argues that the officers should not have put any weight on his statements.  Despite his intoxication, Gorsuch was able to get out of the car, find his cell phone, call 911, talk with the 911 dispatcher about the accident, talk with Park who first came upon the accident, talk with the responding police officers and EMTs, and remain alert and engaged through the process.  Although Gorsuch smelled of alcohol, his intoxication did not appear to impair his ability to communicate.

Gorsuch also notes that the passenger's side airbags deployed while the driver's airbags did not deploy.  He argues that the passenger would have been protected by the airbags while the driver was not protected, which would explain the more severe injuries to Rodriguez as the driver.  Maloney saw that the

13

passenger's side airbags deployed in the accident and states in
his affidavit that in his training and experience the damage to
the passenger side of the car would have caused extensive
injuries to the passenger.

Based on the circumstances known to the officers at the time
of the arrest, probable cause existed to arrest Gorsuch for
negligent homicide.  The defendants are entitled to summary
judgment on Count I.


### b.   License Revocation Proceeding

With respect to the license revocation proceeding, the
defendants demonstrate that they did not institute that
proceeding.  The proceeding was instituted by State Trooper
Bowman.  Gorsuch does not address that part of the motion for
summary judgment in his objection.  Therefore, because Gorsuch
cannot prove that the Nashua defendants instituted the license
revocation proceeding, the defendants are entitled to summary
judgment on Count II.


### 2.   Intentional Infliction of Emotional Distress - Count V

Gorsuch alleges that the defendants intentionally inflicted
emotional distress by falsely accusing him of negligent homicide,
by maliciously prosecuting him on that charge, by manipulating
his emotions, and by creating and using false evidence against
him.  The defendants contend that probable cause to arrest

14

Gorsuch undermines his claim.  They also contend that Gorsuch lacks evidence that they created or used false evidence.

Intentional infliction of emotional distress requires proof that the defendant "'by extreme and outrageous conduct, intentionally or recklessly cause[d] severe emotional distress to another.'" Tessier v. Rockefeller, 162 N.H. 324, 341 (2011) (quoting Morancy v. Morancy, 134 N.H. 493, 496 (1991)).  To incur liability for intentional infliction of emotional distress, the defendant's actions must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Tessier, 162 N.H. at 341 (internal quotation marks omitted).  "[F]alse accusations may be grounds for liability under an intentional infliction of emotional distress claim," particularly when joined with an abuse of authority. Mikell v. School Admin. Unit No. 33, 158 N.H. 723, 729 (2009).

In this case, however, the defendants had probable cause to arrest Gorsuch for negligent homicide.  Therefore, he was not falsely accused.  Gorsuch argues that the defendants manufactured the accident report, in which they concluded that Gorsuch was the driver of the car, as false evidence against him.  The record does not support that theory.

The police department's accident report was based on the officers' investigation, including Gorsuch's statements, the condition of the car, and the location of Rodriguez's body after

15

the accident.  Based on the results of the investigation, the
officers concluded that Gorsuch was the driver.  Gorsuch does not
suggest that any of the information relied on in the report was
fabricated.

Instead, Gorsuch charges that the police did their
investigation too quickly and failed to use scientific methods,
including occupant kinetics, which the accident reconstruction
experts used to arrive at their conclusions that Rodriguez was
the driver.  Gorsuch relies on the report provided by McNally,
who criticized the police report on the grounds that "no attempt
was made by the police investigators to conduct an analysis of
the movements of the occupants of the [car] during the crash."
Based on that criticism, Gorsuch contends that the police
manufactured evidence against him to justify the blood test done
at the hospital.

Gorsuch has provided evidence that the police did not use
the accident reconstruction methods that Johnston, Schack, and
McNally used to determine who was driving.  He has provided no
evidence, however, that the police intentionally avoided using
those methods in order to arrive at a conclusion adverse to
Gorsuch or that they used fabricated evidence to support their
report.  As such, Gorsuch has shown, at most, that the police
report may not have been as complete or thorough as the accident
reconstruction experts' reports.  The fact that the police used a
different method in investigating the accident does not suggest
that the defendants abused their authority to falsely accuse

16

Gorsuch of negligent homicide or that they fabricated evidence against him.  In the absence of a material factual dispute, the defendants are entitled to summary judgment on the intentional infliction of emotional distress claim in Count V.

Because Gorsuch's state law claims fail on the merits, it is not necessary to consider whether official immunity would preclude liability.  Further, because Gorsuch failed to show that the individual defendants committed a tort, his respondeat superior claim also fails.  See Greenberg v. Mynczywor, 667 F. Supp. 901, 906 (D.N.H. 1987).

B.  Federal Claims

In Counts III, IX, and X, Gorsuch alleges claims under § 1983.  The defendants move for summary judgment on the merits and also assert qualified immunity.  Gorsuch objects to summary judgment.

1.  Substantive Due Process - Count III

Gorsuch alleges that Maloney and Fisher violated his right to substantive due process by fabricating false evidence against him in the form of the police accident report which concluded that he was the driver of the car at the time of the accident. He also alleges that the defendants failed to disclose exculpatory and impeachment evidence to the prosecutor.  The defendants move for summary judgment on the grounds that the

evidence supported their accident report and that no evidence was fabricated or withheld.

Substantive due process, provided in the due process clauses of the Fifth and Fourteenth Amendments, protects against official misconduct that is constitutionally arbitrary or shocks the conscience.  Marrero-Rodriguez v. Municipality of San Juan, 677 F.3d 497, 502 (1st Cir. 2012).  Negligence does not rise to the level of conscience-shocking misconduct.  Id.  A plaintiff asserting a substantive due process claim "bears the burden of showing that the challenged actions were so egregious as to shock the conscience."  Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 16 (1st Cir. 2011).

In support of his claim, Gorsuch cites Haley v. City of Boston, 657 F.3d 39, 50 (1st Cir. 2011), to show that deliberately fabricating evidence and framing an accused for a crime he did not commit violates due process.  In Haley, the plaintiff brought a § 1983 action against the city and police officers after his murder conviction was vacated.  Id. at 44.  A review of the case more than thirty years after Haley's conviction showed that interview statements by two material witnesses, which contradicted their trial testimony, were not disclosed to the defense.  Id.  The court held that the police officers involved deliberately concealed the interview statements, in violation of Haley's due process rights, and that they were not entitled to qualified immunity.  Id. at 50-51.

18

Here, Gorsuch provides no evidence of deliberately concealed evidence or of fabricated evidence.  Instead, Gorsuch merely states that the defendants concealed and fabricated evidence.  To properly oppose summary judgment, the nonmoving party must provide competent evidence to show that a material factual dispute exists.  Fed. R. Civ. P. 56(c).  "[A] conglomeration of conclusory allegations, improbable inferences, and unsupported speculation is insufficient to discharge the nonmovant's burden." Rockwood v. SKF USA, 687 F.3d 1, 9 (1st Cir. 2012) (internal quotation marks omitted).

The different conclusions reached by the police in their accident report and the accident reconstruction experts in their reports do not demonstrate concealed or fabricated evidence.  The police report was completed before the accident reconstruction experts provided their reports.  The differences in methodology do not show a substantive due process violation.

It is Gorsuch's burden to show a substantive due process violation, and he has not provided evidence to support his claim. Therefore the defendants are entitled to summary judgment on the substantive due process claim in Count III.

### 2.  Conspiracies - Counts IX and X

In the remaining federal claims, Gorsuch asserts civil conspiracy theories.  In Count IX, he contends that Maloney, Fisher, and Maher conspired to violated his substantive due process rights by fabricating their accident report to show that

19

he was the driver of the car, which they knew was not true.  In
Count X, Gorsuch alleges that the police conspired with the state
troopers to have his license revoked by maliciously prosecuting
the license revocation proceeding.  The defendants move for
summary judgment on both claims on the grounds that Gorsuch lacks
evidence to prove them and that they are entitled to qualified
immunity.

      a.  <u>Substantive Due Process Conspiracy - Count IX</u>

     "[A] § 1983 conspiracy requires an actual deprivation of a
right secured by the Constitution and laws."  <u>Chamberlin v. Town</u>
<u>of Stoughton</u>, 601 F.3d 25, 37 (1st Cir. 2010) (internal quotation
marks omitted); <u>Thore v. Howe</u>, 466 F.3d 173, 179 (1st Cir. 2006).
In the absence of a deprivation of a constitutionally protected
right, a conspiracy claim is not actionable.  <u>Brennan v.</u>
<u>Hendrigan</u>, 888 F. 2d 189, 195 (1st Cir. 1989).

     Gorsuch has not provided evidence sufficient to show at
least a material factual dispute as to whether the defendants
violated his substantive due process rights.  Therefore, he
cannot prove his claim that the defendants conspired to violate
his substantive due process rights.

      b.  <u>Malicious Prosecution Conspiracy - Count X</u>

     Gorsuch's second conspiracy claim is based on a theory that
Fisher, Maloney, and Maher conspired with the state troopers to
maliciously prosecute him in the license revocation proceeding.

The defendants contend that Gorsuch cannot show the deprivation of a constitutional right and lacks evidence of a conspiratorial agreement.

"In order to make out an actionable conspiracy under section 1983, a plaintiff has to prove not only a conspiratorial agreement but also an actual abridgment of some federally-secured right." Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001). When state law provides a cause of action for malicious prosecution, a plaintiff cannot bring a § 1983 claim for malicious prosecution as a procedural or substantive due process claim. Id. To the extent a malicious prosecution theory is cognizable under § 1983, it would be under the Fourth Amendment, which requires the plaintiff to show that he was deprived of liberty "pursuant to legal process." Id. at 54; accord Harrington v. City of Nashua, 610 F.3d 24, 30 (1st Cir. 2010). A warrantless arrest cannot provide the basis for a federal malicious prosecution claim. Id. Therefore, to maintain the claim, a plaintiff must show a Fourth Amendment seizure caused by the application of legal process. Id.; see also Moreno-Medina v. Toldo, 458 Fed. Appx. 4, 7 (1st Cir. 2012).

As is discussed above, Trooper Bowman instituted the license revocation proceeding. She notified the Nashua Police Department that the state was pursuing license revocation against Gorsuch and asked Fisher to provide materials for that proceeding. Fisher testified at hearings under subpoena.

21

Gorsuch provides no evidence that he was seized within the meaning of the Fourth Amendment when that proceeding began or at any time related to that proceeding.  Further, Gorsuch provides no evidence that Maloney, Fisher, and Maher conspired with the state troopers to have Gorsuch seized for purposes of the license revocation proceeding.  Therefore, the defendants are entitled to summary judgment on the conspiracy claim in Count X.

Because summary judgment is granted in the defendants' favor on the merits of Gorsuch's claims, the court does not address qualified immunity.

<u>Conclusion</u>

For the foregoing reasons, the defendants' motion for summary judgment (document no. 58) is granted.  All of the plaintiffs' claims have been resolved in the defendants' favor.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

November 19, 2012

cc:  Brian J.S. Cullen, Esq.
     Richard J. Lehmann, Esq.
     Kevin H. O'Neill, Esq.

22